[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the bifurcated portion of the trial previously ordered by the court. The issues at this stage deal with the form of judgment and appropriate attorneys' fees for the plaintiff.
I. FORM OF JUDGMENT CT Page 7676
The debt is found to be $94,025.95 broken down as follows:
Principal — $68,480
Interest to 4/15/92 — $23,371.91
Interest from 4/15/92 to 8/10/92 — $2,084.94
Per diem — $17.82
Giving due consideration to the testimony of the plaintiff's appraiser, C. Robert Brown and the testimony of the owner of the equity of redemption, Ridgely W. Brown, the value of the premises foreclosed is found to be $325,000.
Foreclosure by sale is hereby ordered with a sale date of November 12, 1992. Additional terms of this judgment are found in the attached preprinted form. The committee is instructed to incur no expenses until 45 days prior to sale.
II. ATTORNEYS' FEES
The defendants signed a mortgage note which contained a provision requiring them to pay "collection and legal costs including attorneys' fees" in the event of a default. The mortgage deed limited the obligation to "reasonable" attorneys' fees.
Section 49-7 of the General Statutes which governs the award of attorneys' fees in mortgage foreclosure actions provides:
 Any agreement contained . . . in any mortgage, to pay costs, expenses or attorneys' fees, or any of them, incurred by the holder of that . . . mortgage . . . in any foreclosure of the mortgage . . . is valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amount to be allowed for those expenses and attorneys' fees, even though the agreement may specify a larger sum. (emphasis supplied)
This statute validates an agreement for attorneys' fees in "any proceeding for the collection of the debt, or in any foreclosure of the mortgage . . .", City Savings Bank of Bridgeport v. Miko, 1 Conn. App. 30, 36 (1983). Where the amount sought is based on a contractual provision for attorneys' fees our Supreme Court has held that courts may rely upon their general knowledge of what has occurred in the proceedings before them to supply evidence in support of an award of attorneys' fees, Bizzoco v. Chinitz,193 Conn. 304, 310 (1984). An award under such a clause requires an CT Page 7677 evidentiary showing of reasonableness where as here the issue is contested, Appliance, Inc. v. Yost, 186 Conn. 673, 680 (1982). An attorney who applies for court ordered compensation must document the application with contemporaneous time records, Tedesco v. City of Stamford, 24 Conn. App. 377 (1990), reversed on other grounds,222 Conn. 233 (1992). This procedure was followed in this case.
The plaintiff seeks to be compensated for attorneys' fees in the amount of $48,975 plus an extra amount for Attorney Ryan's participation in the last two days of the trial and preparation of its supplemental brief. The plaintiff contends that all fees were incurred in the proper course of the collection process and in the valid defense of the defendants' numerous special defenses and counterclaim which were discussed in this court's memorandum of decision of December 10, 1991. The defendant asks that it not be penalized for raising various defenses to the action and complains that the fees are "grossly exorbitant". For the reasons that follow this court believes that a fee in excess of $50,000 to foreclose this mortgage is excessive, unreasonable and therefore unwarranted.
Under Sec. 49-7 the court has discretion over the amount of an award to assure that the award is in fact for "fair compensation rather than a penalty". The standards for determining "fair compensation" have not been clearly defined and the term "penalty" as used in this context has not been judicially construed. When interpreting contractual fee shifting provisions, courts generally speak in terms of "reasonable" attorneys fees. In the context of statutes allowing attorneys' fees, the term "penalty" has generally been used to punish a party who has violated a statute enacted under the police power, 1 Speiser, Attorneys' Fees 12:55. For instance, in an action by an adjoining landowner to compel a railroad company to erect a fence which was mandated by statute, the plaintiff was entitled to recover attorneys' fees under the statute as a penalty for damages imposed by the legislature as a punishment for the negligent and willful failure of the railroad to erect the fence. Terre Haute and L. Ry. Co. v. Salmon, 67 N.E. 918 (1903 Ind.)
In the case of a mortgage foreclosure, a fee shifting provision serves a useful purpose by encouraging compliance with the borrowers' contractual obligations. At the same time, the award is not intended as a penalty for defaulting on the terms of the mortgage. The court's finding as to attorneys' fees must constitute fair compensation to the plaintiff for collecting the debt in the light of the particular facts and circumstances of the case before it.
There are several general factors which should be considered in determining the amount to be allowed as fair compensation. CT Page 7678 These factors are summarized in Rule 1.5 of the Rules of Professional Conduct:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
 (5) The time limitations imposed by the client or by the circumstances;
 (6) The nature and length of the professional relationship with the client;
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
The court may consider other factors in reaching its decision such as the avoidance of double billing produced by duplication of effort.
This foreclosure action involves two separate plaintiff's attorneys acting collaboratively although their time did not completely overlap. In Sharp v. Hui Wahine, Inc., 413 P.2d 242,247 (1966), the mortgagor contended that a large portion of time spent by prior counsel and successor counsel was duplicative. The court found that the fees, in the aggregate, should not exceed the value of the services that are reasonably necessary under the circumstances of the case. Id. at 247. The court also stated that "time and labor alone are not controlling in the matter of an attorney's fee as this would penalize ability and experience in preference to incompetency". Id. at 246. Attorney Warren MacKenzie began as counsel for the plaintiff in November of 1989. In February of 1990, MacKenzie's firm hired Attorney Peter Ryan to perform strictly as an advisor. From September of 1990 to the present Attorney Ryan rendered services directly on behalf of the plaintiff CT Page 7679 and no longer acted as a mere advisor.
The plaintiff claims that in excess of 476.90 hours were devoted to this action. The defendant contends that Attorneys Ryan and MacKenzie spent 103.50 hours talking to each other either on the telephone or in person. Daily time records indicate that the attorneys consulted each other through every step of the proceeding and on numerous occasions did so on several successive days. The defendant correctly further contends that an excessive amount of time was expended by Mr. MacKenzie in researching and preparing relatively simple pleadings.[1] Ordinarily, the prosecution of a mortgage foreclosure should require only one lawyer. The defendant should not be responsible for the fees of both lawyers when time was expended researching the same issues, taking depositions together and communicating over the progress of the proceeding. Certainly a mortgagee is not free to hire as many lawyers as it wishes to represent it in a foreclosure action if it expects the mortgagor to pay for them.
It also is proper for the court to consider the relationship between the amount of the debt and the amount of the attorneys' fees requested. In this instance over $50,000 of fees were incurred to secure approximately $94,000. One decision addresses this issue in the reverse. In Sharp, supra, the court found no justification for a large fee simply because a large amount was involved in the suit. The actual services performed must be justified. Id. at 247. The court has wide discretion to reduce an award when it finds the fees excessive.
In Shawmut First Bank and Trust Co. v. Vakalis, 1 CSCR 513
(July 15, 1986, M. Hennessey, J.) the court denied the bank's request for $50,000 in attorneys' fees finding the work done by the plaintiff's counsel both excessive and unwarranted. The plaintiff's contention was that the fees were necessary to "meet the defendants at every turn and address each element of their specious, bad faith efforts and delay". Id. at 514. The court stated that "the plaintiff's argument that it can take a shotgun approach as to assets securing its debts, let the pellets fall where they may, has no place in a court of equity". Id. at 514. The court found that $15,000 was a reasonable fee.
In Federal Land Bank, ETC. v. Ambrosano, 453 N.Y.S.2d 857, 858 (1982), New York Appellate Division affirmed a lower court's finding that 325.6 billable hours amounting to $27,441 was unreasonable in a mortgage foreclosure action. The court held that the trial court was most familiar with the complexity of the case and that an award of $6,000 was reasonable under the circumstances. Id. at 859. The court noted that "counsel itself implicitly conceded that it expended more than reasonable time on the litigation by deleting some 85 hours of time actually expended to CT Page 7680 arrive at billable hours". Id. at 859. Similarly in this case, counsel have not charged their normal billing rate because of the large number of hours accrued.
In Gandy Machinery, Inc. v. Pogue, 483 N.Y.S.2d 744, 745 (1984), the same New York court upheld a finding that $16,052 for attorneys' fees was excessive in a foreclosure and a reduction of $2,000 was proper. The trial court based its decision on two factors: that a substantial portion of the work resulted from delays by the plaintiff's counsel and that the hourly rate was excessive. Id. at 746.
This court also takes note of the personal and professional relationship that existed between the plaintiff's attorneys and the defendant Ridgely W. Brown prior to the commencement of this action. The defendants contend that both attorneys "bore personal and professional enmity to Ridgely Brown". The plaintiff responds that "it is Mr. Brown's attitude toward MacKenzie, Millar and Brown" that has created the enmity. Irrespective of blame, it is evident to the court that personal animus greatly influenced the course of this litigation. The evidence disclosed that Attorneys Brown and MacKenzie publicly attacked one another's integrity at a local zoning agency meeting. Attorneys Brown and Ryan are ex law partners who dissolved their partnership on rancorous terms and subsequently litigated with one another. Their animosity for one another frequently electrified the trial.[2] This court is not the proper forum for pursuing personal agendas and playing out past rivalries. An attorney's professional obligations demand undivided loyalty to his client and so the attorney should have only the client's objectives in mind and not be distracted by the pursuit of ulterior motives. The aggressive prosecution of litigation at all cost is a waste of this court's time and a violation of professional ethics.
Obviously, when a lawyer has an interest adverse to a client the lawyer should know when that condition will adversely affect services rendered and should not accept employment. ABA/BNA Lawyers Manual 51:401. Precepts of sound judgment and high standards of professionalism mandate that the same rule apply here. In this instance, vindication of personal interests added superfluous time to the litigation which cannot be justified. An award of attorneys' fees in the amount requested would send the wrong message that the court has placed its stamp of approval on the attorneys' conduct.
When the plaintiff hired Attorneys MacKenzie and Ryan it had a duty to make reasonable inquiry to discover any pre-existing relationship that was likely to interfere with the attorney's reciprocal duty to both the client and the court to incur only time charges that were reasonably necessary. Correspondingly, the CT Page 7681 attorneys had a duty to disclose the prior relationship to the plaintiff. Had proper inquiry and disclosure been made, an unduly bitter and protracted proceeding could have been avoided. Instead, wittingly or unwittingly, the plaintiff promoted a grudge match in which only one of the contestants participated voluntarily.
Public policy concerns also influence the court's award of attorneys' fees. Under our statutory scheme the defendant in a foreclosure action must bear the costs of both sides of the litigation. The danger inherent in this arrangement is that the defendant may be reluctant to raise a meritorious defense because he fears that if he loses he will have to pay not only his own cost of defense but the plaintiff's costs as well.
In Markt v. Ro-Mart, INC., 471 F. Sup. 1292, 1299 (1979), the District Court expressed well the policy concerns which flow from the practice of fee shifting. "Contractual provisions requiring payment of attorneys' fees present a would-be litigant with a serious dilemma: on the one hand, the defendant sued under a contract with such a provision should, like all other litigants, present those defenses reasonably available, and should pursue them with an appropriate level of vigor. On the other hand, the defendant does so at the risk of losing far more than he may have bargained for in that should he lose, he will be liable not only for the damages sought in the suit on the merits, but in addition for the litigation expenses and attorneys' fees incurred by the plaintiff in rebutting the defendant's own arguments. The court finds this dilemma inequitable. The court must therefore strike some balance between the utility of fees clauses in preventing frivolous or dilatory tactics, and the disutility that such clauses serve when they discourage or might discourage the bringing of a possibly meritorious defense. In order to strike this balance, the court must, as a matter of public policy, read into the fees clause an exception to defendant's liability for fees where the fees were incurred in opposing a reasonable, good faith defense".
While this court is unwilling to read such a blanket exception into 49-7 it is entirely appropriate to apply a balancing test between the statute's salutary purpose of encouraging contractual compliance and timely payment on the one hand and discouraging the assertion of good faith defenses, counterclaims and setoffs on the other. The results of this test are reflected in the award.
The Court has considered in detail all of the exhibits in the case including the daily time diaries and an itemized schedule of services,[3] has heard the testimony of the attorneys and has weighed such factors as duplication of services, time and labor required in relation to the nature of the proceedings and the public policy concerns expressed above. Accordingly, the sum of $12,500 is awarded to the plaintiff as fair compensation for its CT Page 7682 attorneys services. Disbursement for costs will be approved upon filing of a bill of costs.
MOTTOLESE, J.