[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in this matter, Peter Matejek, was employed as a supernumerary police officer by the City of Derby from 1989 until his resignation on June 11, 1997. As such he was covered by an agreement between the City and the defendant A.F.S.C.M.E. Local 1376. This was a union agreement entered into by the City and the Derby Police Union Local No. 1376 of Council 15 (Plaintiff's Exhibit 1) and the plaintiff as a supernumerary office was protected and bound by the terms of this agreement during the tenure of his employment.
Richard Lucarelli, a witness presented by the plaintiff, was employed by the Derby Police Department from 1985 to 1996 and was president of the defendant union until October 1996 when he left the department. The plaintiff due to certain questions arising as regards his ability to effectively perform his duties as a supernumerary was placed on an administrative leave in 1995. This was intended to serve as a disciplinary reprimand stemming from the claimed improper conduct on the part of the plaintiff. The effect of this was that he was removed from a call-up list of supernumeraries for such period of time that he was placed on leave and according to the plaintiff he was prevented from receiving an income which averaged approximately $16,000 per year over the period of 1991 to 1994. When the plaintiff was placed on leave, he requested Lucarelli to file a grievance on his behalf. Lucarelli declined to do so because in his view the plaintiff wasn't suffering any loss as a supernumerary as a supernumerary was not guaranteed compensable employment unlike a regular police officer who was employed by the City on a. fulltime basis. This determination was reached by Lucarelli as union president with the advice of the union attorney. The plaintiff at that point could have filed his own grievance under provisions of the agreement (See Article 5 — Grievance Procedure Sec. 5.2(7) but he evidently chose not to as none was filed. On August 3, 1995 Chief Andrew Cota recommended a 10-day suspension (or 10 bookings) (See Def. Ex. 1) but this was not accepted by the Board of Police Commissioners which in the spring of 1996 held a disciplinary hearing as regards the plaintiff CT Page 14721 and determined that he should be suspended for 60 bookings. Lucarelli then at the request of the plaintiff filed a grievance requesting that the suspension be rescinded and that the plaintiff be "made whole" for any losses he sustained as a result of the suspension. (Plaintiff's Ex. 2.) This grievance was processed by the union in accordance with the collective bargaining agreement and on January 22, 1999 the union settled the grievance in the fashion they felt appropriate by agreeing with the City that the suspension be expunged from the plaintiffs personnel records. This settlement was reached without the plaintiff's agreement or consent but the union points out that permission of the employee is not required and in fact the union by filing the grievance became the actual party in interest. (See Collective Bargaining Agreement — Plaintiff's Ex. 1 — Section 5.2, Step 3).
Defendant's Exhibit 2 sets out an agreement reached between the City and the plaintiff terminating the plaintiff's suspension as a supernumerary police office in June 1997 which agreement was contingent upon certain conditions but with the plaintiff reserving any rights he might pursue as regards any grievance filed as to the 60-day suspension. (As noted earlier, the plaintiff voluntarily resigned his position on June 11, 1997 shortly after this agreement was reached).
The plaintiff now claims that the defendant breached its duty of good faith and fair representation and acted in an arbitrary manner by failing to file a grievance when originally requested and by later entering into settlement with the City of Derby without the plaintiff's consent. The defendant by way of special defense alleges that the plaintiff's claim is barred by the statute of limitations as it was not brought within 3 years of the date of the act complained of — the failure of the union to file a grievance in 1995 as requested, This action was brought on June 22, 2000 or 5 years later according to the sheriff's return and (2) that the plaintiff failed to exhaust his administrative remedies in that the plaintiff could have sought an award of damages by appeal to the State Board of Labor Relations under Sec. 7.471 C.G.S.
It is clear that the relationship between the parties involved in this litigation is determined by the terms of the collective bargaining agreement and they are bound thereby. In this case, the plaintiff possessed the right and power to file a grievance on his own under the applicable provisions of the agreement. Either he and/or his attorney presumably elected not to pursue such a course when the plaintiff requested the union president to file the initial grievance and the request was rejected. When the grievance was finally filed by Lucarelli on March 22, 1996, under the terms of the agreement the union acting though its president became the party pursuing the grievance. When a CT Page 14722 settlement was reached according to the testimony of Kenneth Dupke, then union president, the union believed it was acting in the best interests of the union and the plaintiff. The case of Tedesco v. Stamford,222 Conn. 233 at 248 notes the obligation on the part of the union in carrying out the terms of the collective bargaining agreement is to represent its members in good faith. "A union may not arbitrarily ignore a meritorious grievance or process in a perfunctory fashion", Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 176. Ed.2d 842. The evidence in this case demonstrates the union's effort to pursue the plaintiff's grievance and to resolve it in a manner which it felt to be appropriate and fair and in accordance with the agreement. It is clear that the union's adherence to the terms of the agreement should not operate as a penalty to be invoked by a dissatisfied union member. In this case it appears that the union did not ignore the plaintiff's claim nor treat it in a perfunctory fashion. There is no suggestion arising out of the evidence produced to the court that the defendant acted arbitrarily, discriminatorily or in bad faith and consequently the court finds no breach of the duty of fair representation owed to the plaintiff as a member of the defendant union.
Judgment may enter for the defendant.
_____________________ George W. Ripley II Judge Trial Referee CT Page 14723