ROBERT C. JOHNSON *v.* DEPARTMENT OF
PUBLIC HEALTH ET AL.
(AC 16394)

Foti, Schaller and Healey, Js.

Argued November 4, 1997—officially released March 17, 1998

*Jeffrey F. Gostyla,* with whom, on the brief, was *Edward T. Lynch,* for the appellant (plaintiff).

*Christy Scott,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellees (defendants).

*Opinion*

HEALEY, J. The plaintiff, Robert C. Johnson, appeals from the trial court's decision dismissing his administrative appeal from the decision of the department of public health (department) and dismissing his "independent civil action" for declaratory judgment, injunctive and other relief. On appeal, he claims that the trial court

improperly (1) granted the defendants'[1] motion to dismiss the administrative appeal, (2) granted the defendants' motion to dismiss his "independent civil action" for declaratory judgment, (3) failed to address the plaintiff's claims of aggrievement, and (4) applied an improper standard of review in determining the defendants' motion to dismiss. We affirm the judgment of the trial court.

This appeal arises out of an administrative action instituted on charges by the department to revoke the plaintiff's state nursing home administrator's license.[2] The statement of charges, issued February 9, 1995, and amended June 22, 1995, accused the plaintiff of failing to investigate and report allegations of resident abuse, neglect, mistreatment and injuries of unknown origin, concealing abusive staff conduct, and failing to take reasonable steps to protect residents from neglect and abuse, which allegedly took place during 1991 and 1992. Thereafter, the plaintiff filed with the department hearing officer a motion to dismiss the department's administrative action.[3] On September 7, 1995, the department

---

[1] The defendants are the department, its commissioner and the hearing officers to whom the plaintiff's case was assigned.

[2] The plaintiff is the licensed administrator of Pilgrim Manor, a nursing home located in Cromwell and licensed pursuant to chapter 368v of the General Statutes.

[3] The plaintiff's "motion" challenging the department's jurisdiction to proceed was made in a letter, dated May 11, 1995, from his attorney to the department. The letter stated, in relevant part: "This letter serves as our formal objection and challenge to the jurisdiction of the State of Connecticut Department of Public Health and Addiction Services ('DPHAS') to proceed to a formal hearing which, at this time, may affect Mr. Johnson's nursing home license. To begin, the formal charges all relate to claimed violations of regulations occurring no later than May, 1992, three years ago. The pertinent statutes and regulations anticipate prompt investigation and proceedings. Conn. Gen. Stat. § 4-182 (c) specifically requires, in part, 'No revocation, suspension, annulment or withdrawal of any license is lawful unless, *prior to the institution of agency proceedings*, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, *and the licensee was given an opportunity to show compliance* with all lawful requirements for the retention of the license.

hearing officer denied that motion.[4] Shortly thereafter and prior to the start of the administrative hearing, the

* * *

These *proceedings shall be promptly instituted and determined.'*

Contrary to the requirements of Conn. Gen. Stat. § 4-182 (c), DPHAS never provided Robert Johnson with the opportunity to show compliance at any time over the past three years.

"DPHAS has violated this mandate by instituting formal agency proceedings before the notice and conference under § 4-182 (c). Regulation § 19-2a-14 also requires that prior to the issuance of any complaint, the ' . . . commissioner shall afford any licensee an opportunity to show cause why formal charges should not be instituted.' DPHAS has not complied with its own regulations. Now, DPHAS has already prejudged and determined to pursue formal charges, in violation of Mr. Johnson's procedural due process rights under regulation and statute. Any conference will be meaningless, as DPHAS has already determined to pursue formal charges.

"Moreover, in addition to the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.], an essential attribute of due process under both the U.S. Constitution and the State Constitution requires an opportunity to be heard at a meaningful time and in a meaningful manner. See *Nielsen* v. *Kezer*, 232 Conn. 65, 652 A.2d 1013, 1025 (1995) (*Berdon, J.,* [concurring]). The opportunity to be heard three years later is neither timely nor meaningful. DPHAS treats the UAPA and its requirement of the notice and conference, as well as its requirement for prompt proceedings, as though the UAPA is only advisory. The UAPA is designed to safeguard due process rights, and strict compliance with its mandate is ' . . . necessary to ensure that significant property rights are not unlawfully destroyed.' *Pet* v. *Department of Health Services*, 228 Conn. 651, 638 A.2d 6, 24 (1994).

"Compliance with the UAPA is also a jurisdictional requirement. A tribunal of limited authority, such as an administrative agency, cannot proceed without compliance. Compliance conditions the power to act. See *Stern* v. *Medical Examining Board*, 208 Conn. 492, 502, 545 A.2d 1080 (1988); *Castro* v. *Viera*, 207 Conn. 420, 434, 541 A.2d 1216 (1988); *Trinkley* v. *Ella Grasso Regional Center*, 220 Conn. 739, 601 A.2d 515 (1992). The formal charges should be dismissed."

[4] The September 7, 1995 order of the department hearing officer denying the plaintiff's motion stated, in relevant part, the following: "Having considered the respondent's motion to dismiss and supporting memorandum, it is hereby ordered that the request is denied.

"The respondent has not shown that he must be given an opportunity to show compliance prior to the issuance of the statement of charges. The department has provided the respondent with an opportunity to show compliance. The department has jurisdiction to proceed with this action. The department is not estopped from continuing with this action. The present proceedings are not barred by laches. The respondent has not shown a violation of his due process rights."

plaintiff filed the present action in the Superior Court[5] seeking, inter alia, judicial review of the hearing officer's denial of his motion.

Thereupon, the department filed a motion to dismiss for lack of subject matter jurisdiction. The trial court

[5] The "Plaintiff's Complaint and Petition on Appeal" contains eight counts which, in totality, contain over sixty numbered paragraphs of allegations.

The first count alleges the violation of his rights under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., by the past and proposed action of the department, including its violation not only of relevant statutes but also of its own regulations. The second count alleges the breach and repudiation by the department of a prior settlement of the matters in dispute. The third count maintains that estoppel exists against the department because of a prior authorized settlement of matters in dispute. The fourth count attacks the impartiality of the department designated hearing officer as well as alleges that the "present structure and system" violates the plaintiff's right to an impartial hearing officer as well as his due process rights under the federal and state constitutions, and his right to be free "from retaliatory/selective prosecution." The fifth count alleges his belief that police records that were automatically erased under General Statutes § 54-142a et seq. have been used to develop other information and are intended to be used as evidence at a hearing. The sixth count alleges the department's failure to provide him a hearing at a meaningful time in violation of the federal and state constitutions, and in violation of his rights under General Statutes § 4-182. The seventh count alleges the failure of the department to comply with his written request for disclosure of all exculpatory information in its possession or control in violation of his federal and state constitutional rights and those under the UAPA. The eighth count is essentially a count that incorporates much of what was earlier alleged, but adds that the totality of the circumstances and the pattern of department actions indicates a retaliatory and bad faith "prosecution against the plaintiff for exercising and insisting on his rights under the law" and that the department should be barred from further prosecution or action and should be responsible for all the plaintiff's losses and damages, including damages to his reputation and standing in the community and in his profession.

As to his prayers for relief, the plaintiff has set out sixteen. They include eight separate requests for declaratory judgments, that the Superior Court "assume jurisdiction over this civil action and appeal," that the department hearing officer's decision of September 7, 1995, be set aside and the proceedings before the department be dismissed, that temporary and permanent injunctive relief be entered that is appropriate to protect the plaintiff's substantive and procedural rights and to effect and enforce such declaratory judgments as decreed by the court, that he be awarded money damages consistent with General Statutes § 19a-24, and that he be awarded reasonable attorney's fees and expenses under General Statutes § 4-184a.

granted the department's motion to dismiss. It did not write a memorandum in doing so but rather, in granting it, wrote on the motion itself: "See *Polymer Resources Ltd.* v. *Keeney*, 227 Conn. 545 [630 A.2d 1304] (1983) and *Pet* v. *Dept. of Health Services*, 207 Conn. 346 [542 A.2d 672] (1988)." This appeal by the plaintiff followed.

## I

Initially, it is appropriate that we consider the plaintiff's claim that the trial court applied an improper standard of review in determining the department's motion to dismiss. He argues that although "captioned in terms of a challenge to the court's subject matter jurisdiction over [his] claims," the motion "was actually a challenge to the legal sufficiency of [his] complaint [which is] properly raised through a motion to strike."[6] Casting it as a motion to strike, the plaintiff argues that the court has an obligation to take as true the facts alleged in the challenged pleading and then determine whether those facts, if proven, would support a cause of action. If so, the motion to strike must fail. The plaintiff offers very little analysis in support of this argument. "[T]he construction of a pleading is a question ultimately for the court." *Home Oil Co.* v. *Todd*, 195 Conn. 333, 340, 487 A.2d 1095 (1985); *Drahan* v. *Board of Education*, 42 Conn. App. 480, 489, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996). We reject the plaintiff's characterization of the motion as a motion to strike.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. *Pearson* v. *Bridgeport Hydraulic Co.*, 141 Conn. 646,

---

[6] We cannot say that in his forty-six page trial brief filed in opposition to the department's motion to dismiss the plaintiff articulates this claim. Even if he had, it has no merit here. Interestingly, in his appellate brief, the plaintiff concedes that "subject matter jurisdiction was the only matter before the court" as well as acknowledging that a motion to dismiss under Practice Book § 143 is the proper vehicle "to assert (1) lack of jurisdiction over the subject matter . . . ."

648, 109 A.2d 260 (1954)." *Upson* v. *State*, 190 Conn. 622, 624, 461 A.2d 991 (1983). "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 351, quoting *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 556, 529 A.2d 666 (1987); *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 557; *Housing Authority* v. *Papandrea*, 222 Conn. 414, 420, 610 A.2d 637 (1992).

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *LaCroix* v. *Board of Education*, 199 Conn. 70, 83–84, 505 A.2d 1233 (1986). Furthermore, [b]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. *Concerned Citizens of Sterling* v. *Sterling*, [supra, 204 Conn. 556]. [W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings. . . . Id., 557." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420; *Polymer Resources Ltd.* v. *Keeney*, supra, 227 Conn. 557; *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 350–51.

The failure to exhaust administrative remedies implicates the subject matter jurisdiction of the court. That was what the department claimed, that was how the matter was presented to the court and that was how the court decided it. Therefore, the plaintiff's claim that the trial court applied an improper standard of review in determining the department's motion to dismiss is without merit.

## II

We turn next to the plaintiff's claim that the exhaustion doctrine is not applicable here because his claims center on the issue of whether the department has jurisdiction to adjudicate his licensure matters, which, he contends, is properly before the Superior Court to decide. Alternatively, he maintains that exhaustion is not required in this case because the department, in instituting formal charges against him, exceeded its authority by violating its own statutory and regulatory provisions. We do not agree.

The plaintiff claims that the department exceeded its statutory authority and violated its regulatory provisions by subjecting him to a long "delay" in instituting formal charges and failing to afford him a timely opportunity to demonstrate his "compliance with all lawful requirements for the retention of [his] license," as provided in General Statutes § 4-182 (c).[7] In addition, he argues that it is improper to subject him to the cost, inconvenience and impact of having to go through a multiday hearing with the department before he can appeal to the Superior Court. He points out that he clearly satisfies the first prong of General Statutes § 4-183 (b)[8] in asserting his interlocutory appeal and that

[7] General Statutes § 4-182 (c) provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

[8] General Statutes § 4-183 (b) provides: "A person may appeal a preliminary, procedural or intermediate agency action or ruling to the Superior Court if (1) it appears likely that the person will otherwise qualify under this chapter to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy."

as to the second prong, a "postponement of [his] appeal [to the Superior Court] would result in an inadequate remedy." Recourse to the administrative remedy, he argues, would be futile or inadequate. Therefore, he maintains that exhaustion is not required under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.

On the other hand, the department claims that the trial court properly granted the motion to dismiss, as it lacked subject matter jurisdiction to adjudicate the plaintiff's claims because he failed to exhaust his administrative remedies. In addition to claiming that the plaintiff cannot bypass the exhaustion requirement by challenging the agency's jurisdiction, the department also maintains that he has not established that the postponement of his administrative appeal would result in an inadequate remedy.

"It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction." *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care,* 226 Conn. 105, 120, 627 A.2d 1257 (1993). Our Supreme Court has reiterated that "[w]here there is in place a mechanism for adequate judicial review, such as that contained in [General Statutes] § 4-183, it is the general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act—that is, to determine the coverage of the statute—and this question need not, and in fact cannot, be initially decided by a court.' . . . *Greater Bridgeport Transit District* v. *Local Union 1336,* 211 Conn. 436, 439, 559

A.2d 1113 (1989); *Cannata* v. *Department of Environmental Protection,* 215 Conn. 616, 623, 577 A.2d 1017 (1990)." (Internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney,* supra, 227 Conn. 558; *Wilkinson* v. *Inland Wetlands & Watercourses Commission,* 24 Conn. App. 163, 167, 586 A.2d 631 (1991).

Stated in another way, "[i]t is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . Exhaustion is required even in cases where the agency's jurisdiction . . . has been challenged. *Cannata* v. *Dept. of Environmental Protection,* [supra, 215 Conn. 621–22 n.7]; *Greater Bridgeport Transit District* v. *Local Union 1366,* [supra, 211 Conn. 438]; *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328 (1955); *Wilkinson* v. *Inland Wetlands & Watercourses Commission,* [supra, 24 Conn. App. 163]." (Citations omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *Planning & Zoning Commission,* 232 Conn. 419, 425, 655 A.2d 1121 (1995). In *Pet* v. *Dept. of Health Services,* supra, 207 Conn. 346, our Supreme Court said: "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. *Concerned Citizens of Sterling* v. *Sterling,* supra [204 Conn. 557]; *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* [173 Conn. 352, 358–59, 377 A.2d 1099 (1977)]. The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. *Watergate II Apartments* v. *Buffalo Sewer Authority,* 46 N.Y.2d 52, 57, 385 N.E.2d 560, 412 N.Y.S.2d 821 (1978). *Cahill* v. *Board of Education,* [198 Conn. 229, 242, 502 A.2d 410 (1985)]."

(Internal quotation marks omitted.) *Pet* v. *Dept. of Public Health Services*, supra, 207 Conn. 351.

More importantly, a favorable outcome will render review by the court unnecessary. As the United States Supreme Court has noted: "A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." *McKart* v. *United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969); *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 351–52; *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420–21; see *Kashani* v. *Nelson*, 793 F.2d 818, 825–26 (7th Cir.), cert. denied, 479 U.S. 1006, 107 S. Ct. 644, 93 L. Ed. 2d 701 (1986); *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities*, 202 Conn. 150, 156, 520 A.2d 186 (1987). Our Supreme Court has acknowledged that "[e]ven a claim that an administrative agency has exceeded its statutory authority or jurisdiction may be the subject of an administrative appeal. *Payne* v. *Fairfield Hills Hospital*, 215 Conn. 675, 679, 578 A.2d 1025 (1990)." *Housing Authority* v. *Papandrea*, supra, 222 Conn. 424.

The provisions of § 4-183 (b) recognize that exhaustion is required as a prerequisite to the Superior Court's jurisdiction absent exceptional circumstances. *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 558; *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 350–52; see *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 425. "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." *McKart* v. *United States*, supra, 395 U.S. 193; *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 541, 469 A.2d 382 (1983). While our courts have also acknowledged that there are exceptions to the exhaustion doctrine, "we

have recognized such exceptions only infrequently and only for narrowly defined purposes." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, supra, 353; *Hunt* v. *Prior*, 236 Conn. 421, 432, 673 A.2d 514 (1996); *Polymer Resources, Ltd.* v. *Keeney*, supra, 561.

Two recognized exceptions to the exhaustion doctrine are in circumstances in which recourse to the administrative remedy would be inadequate or demonstrably futile. *Hunt* v. *Prior*, supra, 236 Conn. 432; *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 429; *Labbe* v. *Pension Commission*, 229 Conn. 801, 814–15, 643 A.2d 1268 (1994); *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 561; *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 353; *Greenwich* v. *Liquor Control Commission*, supra, 191 Conn. 541–42; *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 519, 442 A.2d 920 (1982); *Lopiano* v. *Stamford*, 22 Conn. App. 591, 595, 577 A.2d 1135 (1990). Exhaustion is not required simply because the plaintiff has brought an interlocutory appeal under § 4-183 (b) challenging the jurisdiction of the department to hear and decide his licensure. In this case, however, nothing has happened to the plaintiff's license issued to him by the department. He is still licensed to operate a nursing home facility and is operating the facility involved. The department has decided nothing except to bring charges against him, against which he will have the right to defend fully prior to any decision by that agency on his licensure. While it is true that exhaustion may be excused where recourse to the administrative remedy would be futile or inadequate, the plaintiff has not demonstrated that resort to agency action will be futile. The mere allegation that it will prove so is not cognizable.

Quite recently, our Supreme Court in *Hunt* v. *Prior*, supra, 236 Conn. 433, quoting *Simko* v. *Ervin*, 234 Conn. 498, 507, 661 A.2d 1018 (1995), stated, "[i]t is futile to seek [an administrative] remedy only when such action could not result in a favorable decision and invariably

would result in further judicial proceedings." (Internal quotation marks omitted.) See *O & G Industries, Inc.* v. *Planning & Zoning Commission,* supra, 232 Conn. 429. That is not the case here. The plaintiff may prevail before the agency. He has available an adequate remedy, recognized under § 4-183 (c), namely, to resort to the agency proceedings that have been instituted, which he now wants to bypass. It is no answer for the plaintiff, in refusing to avail himself of that administrative remedy, to claim that to do so may prove more costly and less convenient than going directly to Superior Court. The United States Supreme Court has said: "Without a clear showing of irreparable injury . . . failure to exhaust administrative remedies serves as a bar to judicial intervention in the agency process." (Citation omitted.) *Renegotiation Board* v. *Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S. Ct. 1028, 39 L. Ed. 2d 123 (1974); see *Emery Air Freight Corp.* v. *Local Union 295,* 786 F.2d 93, 100 (2d Cir. 1986). Again, in the exhaustion context, the same court opined that "the expense and annoyance of litigation is part of the social burden of living under government." (Internal quotation marks omitted.) *Federal Trade Commission* v. *Standard Oil Co. of California,* 449 U.S. 232, 244, 101 S. Ct. 488, 66 L. Ed. 2d 416 (1980), quoting *Petroleum Exploration, Inc.* v. *Public Service Commission,* 304 U.S. 209, 222, 58 S. Ct. 834, 82 L. Ed. 1294 (1987).

In further claiming that the administrative remedy is inadequate and that exhaustion is not required, the plaintiff contends that the department was required to provide him with an opportunity to demonstrate compliance with its statutory and regulatory requirements before the start of administrative proceedings, and that the hearing officer improperly denied his motion to dismiss.[9] In making this claim, he refers to § 4-182 (c), which provides in relevant part: "No revocation, suspension, annulment or withdrawal of any license is lawful

---

[9] See footnote 4.

unless, *prior to the institution of agency proceedings,* the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, *and the licensee was given an opportunity to show compliance* with all lawful requirements for the retention of the license. . . . These proceedings *shall be promptly instituted and determined.*" (Emphasis added.) This claim is without merit.

In addition to General Statutes § 4-182 (c), § 19-2a-14 (a) of the Regulations of Connecticut State Agencies provides: "Upon the completion of any investigation, the commissioner may issue a complaint against a respondent. Prior to the issuance of any complaint, the commissioner shall afford any licensee an opportunity to show cause why formal charges should not be instituted." The plaintiff argues that his rights under the statute and the regulations were violated because he was not given the "advance opportunity," i.e., prior to the bringing of formal charges against him, "to show compliance." In making this claim, he argues that the department instituted formal agency proceedings against him on February 9, 1995, by the issuance of a statement of charges. Under date of May 2, 1995, the department wrote to the plaintiff, scheduling a "compliance conference" on May 11, 1995.[10] The plaintiff chose

---

[10] The letter from the department to the plaintiff, dated May 2, 1995, provides in relevant part:

"Pursuant to § 4-182 (c) of the General Statutes of Connecticut, this is to notify you that I have scheduled a conference for 11:30 a.m. on the 11th day of May, 1995, at the Department of Public Health and Addiction Services, 150 Washington Street, Hartford, CT. This conference is to discuss the merits of the case against you alleging:

1. failure to enforce state regulations with respect to investigating and reporting of allegations of patient mistreatment, neglect and/or abuse;

2. failure to or cause to submit to the appropriate law enforcement agency, a detailed statement regarding an alleged criminal action by a facility employee toward a patient; and

3. failure to provide [a] mechanism for monitoring staff activity and preventing patient abuse.

This office is presently pursuing formal proceedings against you before

not to attend the proposed May 11, 1995 conference, stating that it would be "meaningless" given that the department "has already determined to pursue formal charges." In his attorney's letter of May 11, 1995, he stated that the department "has not complied with its own regulations," and "has already prejudged and determined to bring formal charges in violation of [the plaintiff's] procedural due process rights under regulation and statute." We are not persuaded by the plaintiff's claims.

First, under the state of the record, including the fact that no formal hearings on the pending charges have yet been held and no determination made concerning his license, the plaintiff's claims are lacking in merit. In his appellate brief, the plaintiff claims that he was not given the compliance opportunity "mandated by Connecticut law," and he rejects out of hand the claim that he had other "opportunities" to show compliance evidenced by letters provided to him earlier in the administrative proceedings. These, he claims, do not comply with § 4-183 (c) as they "do not pertain to [him] and-or are defective because they do not specify facts or conduct." In addition, in a letter dated February 2, 1993, the department wrote to the plaintiff as administrator of the licensed facility that "[i]n accordance with

a duly authorized hearing officer pursuant to §19a-14 of the General Statutes of Connecticut to seek revocation of your license or other disciplinary action on the grounds that your alleged actions constituted a violation of Department of Public Health and Addiction Services Regulation §19-13-D8t-(f) (3) (A) and §19a-553 of the General Statutes of Connecticut.

The purpose of this meeting is to discuss the aforesaid alleged violations and to provide you with an opportunity to show compliance and to discuss the possibility of settling this matter without the necessity of holding a formal hearing concerning your alleged misconduct.

It is not mandatory for you to attend this meeting; however, if you do not attend this meeting, this office will have no recourse but to proceed with a formal hearing on June 1, 1995.

If you so desire, you may be accompanied by your attorney at such conference."

General Statutes § 19a-14 (a) (10) and § 19a-14 (a) (11), this department is conducting an investigation with reference to your failure to take appropriate action, at various time in the past, when you were informed of allegations of patient abuse." It also requested that he provide the department with a response to a specific petition referred to earlier in the letter.

One of these letters is specifically directed to the plaintiff as the "Administrator."[11] Under the department regulations, specifically § 19-13-D8t (f) (3), we point out that "[t]he administrator [of a licensed facility] shall be responsible for the overall management of the facility and shall have the following powers and responsibilities: (A) Enforcement of any applicable local and state regulations, any federal regulations that may apply to federal programs in which the facility participates, and facility by-laws . . . ." The plaintiff maintains that negotiations took place over a period of time with the department over the latter's claims. Whether these were "opportunities" to show compliance is not for this court to say. The plaintiff, however, apparently feels the need to disavow them as such, and it is disingenuous of him to suggest that they "do not pertain to [him]" as he was the "administrator" of the facility at that time and still is.

Second, we cannot, in the circumstances of this case, agree that he is entitled to bypass the exhaustion requirement because of the "violation" by the department of his procedural due process rights by not affording him the opportunity to show compliance as provided for in General Statutes § 4-182 (c) and § 19-2a-14 of the Regulations of Connecticut State Agencies.

---

[11] One of these documents is addressed to the plaintiff as "Administrator" and has attached to it fourteen alleged violations of the public health code and General Statutes. At least some of these are asserted by the plaintiff to have been settled. Most of these allegations do refer to some circumstances of the alleged violations. Three refer specifically to what "the administrator failed" to do.

" 'The concern of due process is the fair administration of justice." *In re Dodson*, 214 Conn. 344, 368, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). Due process is " 'not a technical conception with a fixed content unrelated to time, place and circumstances.' . . . Rather, it is a flexible doctrine, requiring 'such procedural protections as the particular situation demands.' *Morrissey* v. *Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)." (Citation omitted.) *Williams* v. *Bartlett*, 189 Conn. 471, 476–77, 457 A.2d 290, appeal dismissed, 464 U.S. 801, 104 S. Ct. 46, 78 L. Ed. 2d 67 (1983); *Computer Assistance, Inc.* v. *Morris*, 564 F. Sup. 1054, 1059 (D. Conn. 1983); *Tedesco* v. *Stamford*, 222 Conn. 233, 242, 610 A.2d 574 (1992). Even if we assume that the plaintiff was not afforded literal compliance with the statute and regulation, the plaintiff did choose not to participate in the proposed compliance conference of May 11, 1995, made available to him prior to a formal hearing. We need not decide whether that opportunity fell within the flexible ambit of appropriate procedural due process. Moreover, he still has the opportunity in the formal hearing to show "compliance" and may even prevail. It cannot be overlooked that there has been no "revocation, suspension, annulment or withdrawal" of his license nor has there been any sanction of any sort imposed by the department to date. To date, it does not appear that he has been deprived of any recognized property right.

In rejecting the plaintiff's position here, we follow our Supreme Court precedent, which continues "to limit any judicial bypass of even colorable constitutional claims to instances of *demonstrable* futility in pursuing an available administrative remedy." (Emphasis added.) *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 356; *Polymer Resources, Inc.* v. *Keeney*, supra, 227 Conn. 563. There was and is an available administrative remedy that is not demonstrably futile. "Simply bringing a

constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an *available* statutory appeal process." *LaCroix* v. *Board of Education,* supra, 199 Conn. 79. There was and is an available statutory appeal process. Furthermore, "[t]he plaintiff's preference for a particular remedy does not determine the adequacy of an administrative remedy . . . ." *Savoy Laundry, Inc.* v. *Stratford,* 32 Conn. App. 636, 642, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993).

Under the facts of this case, we hold that the trial court properly dismissed the plaintiff's claims for failure to exhaust his administrative remedies.

### III

We turn next to the plaintiff's claim that even if we conclude that the trial court properly granted the department's motion to dismiss under § 4-183 (b) of the UAPA, nonetheless, his "separate collateral civil action" must stand. This styled "independent civil action" contains not only constitutional claims but also prayers for declaratory judgment, including that the department is barred and estopped from proceeding with any disciplinary hearing, and that the department appoint a neutral, impartial hearing officer not employed by the department and not under the direct control of the department. In addition to asking the Superior Court "to assume jurisdiction over this civil action and appeal," he also seeks injunctive relief preventing further prosecution of the case against him, and permanent and temporary injunctive relief to protect his substantive and procedural rights. While alleging deprivation of and interference with his constitutional rights by the conduct of the department and arguing in his brief for the recognized property right in his administrative license, he nevertheless does not allege that there has been any deprivation or limitation imposed on it by the department or that he has, in fact, had any sanctions imposed on him.

The department, on the other hand, argues that the plaintiff may not bypass the UAPA exhaustion requirement by filing this self-styled independent civil action. This action, the department argues, does not present a colorable constitutional claim that would suffice to excuse his failure to exhaust his administrative remedies. We agree with the department.

In attempting to circumvent his available administrative remedy by this independent civil action, the plaintiff maintains that he can do this because he is seeking other relief, whether it sounds contract or tort, declaratory judgment or injunctive relief and the like. This approach fails because, on analysis, the factual predicate for his claims relates back to the alleged statutory violations, which provide for a statutory remedy. When the legislature enacts a comprehensive remedial scheme such as the UAPA, with procedural safeguards by which claims are to be determined by an administrative agency before judicial review is made available, it has laid that down as the public policy most likely to produce results. To effectuate this public policy, the legislative intent is that the trial court should not, generally speaking, act or be called upon to act, until there has been compliance with the statutory scheme. Recently our Supreme Court said: " 'We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specific remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. *Norwich* v. *Lebanon*, 200 Conn. 697, 708, 513 A.2d 77 (1986).' " *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 623. The plaintiff's independent civil action contravenes this holding. He is attempting, under circumstances that are impermissible, to prevent the making of a proper record of agency action, including a decision on the issues, for proper judicial review. This independent civil action invokes the statement of the

United States Supreme Court from *McKart*, which opinion it is said "contains the Court's most comprehensive discussion of the exhaustion doctrine." 2 Davis, Administrative Law Treatise (3d Ed. 1994) § 15.2, p. 308. "In *McKart* v. *United States*, [supra, 395 U.S. 194–95], the United States Supreme Court stated that 'judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise [its] discretion or apply its expertise. . . . [N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. . . . [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.' " See *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 625.

In *Housing Authority* v. *Papandrea*, supra, 222 Conn. 423–24, our Supreme Court, quoting *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 352, said: "[W]hen a party has a statutory right of appeal from a decision of the administrative agency, he may not, instead of appealing, bring an independent action to test the very issues which the [administrative] appeal was designed to test." (Internal quotation marks omitted.) See *Payne* v. *Fairfield Hills Hospital*, supra, 215 Conn. 679; *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 685, 485 A.2d 1272 (1984); *Greenwich* v. *Liquor Control Commission*, supra, 191 Conn. 543–44; *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 598, 409 A.2d 1029 (1979); *Haddam* v. *LaPointe*, 42 Conn. App. 631, 636, 680 A.2d 1010 (1996); *Beninato* v. *Zoning Board of Appeals*, 8 Conn. App. 556, 561, 513 A.2d 201 (1986). A fair parsing of the allegations of this "independent action" indicates that it falls well within the ambit of this settled principle. As we noted earlier, "[s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an

available statutory appeal process"; *LaCroix* v. *Board of Education,* supra, 199 Conn. 79; and, in any event, our Supreme Court continues "to limit any judicial bypass of even colorable constitutional claims to instances of demonstrable futility in pursuing an available administrative remedy." *Polymer Resources, Ltd.* v. *Keeney,* supra, 227 Conn. 563. Under the circumstances, especially the continuous holding of his license without sanction or diminution of his privileges by the department, the plaintiff's alleged constitutional claims are not even questionably colorable. Moreover, he has an adequate remedy at law under the UAPA that would presently bar any entitlement to injunctive relief. Id., 564; see *Pet* v. *Dept. of Health Services,* supra, 371. The trial court properly granted the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.