[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is the plaintiff's, Dr. Mark Breiner's application for injunctive relief to enjoin an administrative proceeding brought against him by the State Health Department before the State Dental Commission. The application raised very substantial issues about the fairness of the procedures which brought about the prosecution, use of rulemaking authority and whether the panel could be a fair and impartial tribunal as presently constituted. The plaintiff claims he should not be required to go through the hearing process unless the Dental Commission reconstitutes the panel so that its members are not comprised of American Dental Association members. The defendants counter that the doctrine of exhaustion of administrative remedies militates against the grant of injunctive relief and have refused the request to reconstitute.
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) LaCroix v.Board of Education, 199 Conn. 70, 83-84, 505 A.2d 1233
(1986). This principle of administrative law is grounded on the rationale that (1) a court should have the benefit of an agency's findings and conclusions; (2) exhaustion relieves courts of the burden of deciding questions entrusted to an agency before judicial review; (3) there is possibility of an outcome favorable enough before the administrative agency so that the complaining party is satisfied and judicial review is unnecessary. SeeJohnson v. Dept. of Public Health, 48 Conn. App. 102,112, 710 A.2d 176 (1998). An exception drawn to the exhaustion doctrine which the plaintiff Breiner invokes is where the administrative proceeding would be futile or inadequate.Hunt v. Price, 236 Conn. 421, 432, 673 A.2d 514 (1996). "It is futile to seek [an administrative remedy] only when such action could not result in a favorable decision and invariably would result in further judicial proceedings. (Internal quotation marks omitted.) Id., 433. In order to find futility arising out of bias, a court does not look at each piece of evidence in isolation but to the cumulative evidence presented as a whole.Clisham v. Board of Police Commissioners,223 Conn. 354, 369, 613 A.2d 254 (1992).
Although there are numerous pieces of evidence which point to imperfection in the record of prosecution of the disciplinary proceedings of the Breiner case to date, the court does not find that it shows that the plaintiff's participation in it would be CT Page 11414 legally futile and inadequate. Furthermore, there is the remedy of administrative appeal from the agencies' actions, which should provide Dr. Breiner with judicial review which would suffice as an adequate remedy at law. For those reasons, injunctive relief is denied.
The vortex out of which this case arises is the public controversy over continued use of mercury, a toxic substance, as an ingredient in dental fillings. Our State environmental regulations generally have recognized its highly toxic properties and monitor its use and disposal,[1] yet it still remains the principal ingredient in what used to be known as silver amalgam utilized for filling teeth. The evidence before the court shows there are two professional schools of thought on the controversy. The American Dental Association position is that there is no persuasive evidence that amalgam use can cause bodily harm to patients or that removal of existing mercury fillings will improve health or cure illness. Others in an emerging holistic school of thought link use of toxic amalgams with health danger and specific ailments. The plaintiff falls into this second camp.
The plaintiff, a licensed dentist in Connecticut, has practiced for almost three decades and is now the subject of a disciplinary proceeding before the State of Connecticut State Dental Commission arising out of his views conduct and professional advice about removal of mercury amalgam dental fillings. The Commission consists of nine members appointed by the Governor under C.G.S. § 20-103a(a). Its membership consists of both dentists and non — dentists. On January 17, 1997 the Department of Health issued a statement of charges against the plaintiff pursuant to C.G.S. § 20-114 in which it alleged that the plaintiff engaged in incompetent or fraudulent conduct by claiming that the removal of mercury amalgam fillings could alleviate symptoms of various medical conditions, specifically, amyotrophic lateral sclerosis, anemia and Hodgkins disease and that these claims had been made to different patients in 1985, 1993 and 1994 respectively.
The plaintiff has been the subject of complaints made by practicing dentists for several years. Some of these were made to the Connecticut State Dental Association, a professional association, in which membership is voluntary but which maintains its own Ethics Council. Other complaints were made to the Connecticut State Department of Health. The earliest complaints were not entertained by Health Department officials because of CT Page 11415 their recognition that there were two schools of professional thought on the issue. Later complaints and demands of a Dr. Perry Opin, a Connecticut Dental Society member, resulted in action by a State Health Department employee which resulted in the Connecticut State Dental Commission, an official administrative adjudicative body, taking a position in favor of the American Dental Association view on the subject. Once that happened, in its quasi prosecutorial rule, the Health Department generated a statement of charges against the plaintiff which must now be heard by the Dental Commission as an adjudicative official administrative agency.
Procedurally, the plaintiff previously brought a complaint in U.S. District Court (Conn.) In January of 1998. He alleged the same constitutional violations now raised in State Court. The U.S. District Court (Chatigny, J.) granted the defendants' Motions to Dismiss the plaintiff's complaint and entered judgment for the defendants. The U.S. District Court abstained from taking any action based on principles of equity, comity and federalism, citing Younger v. Harris, 401 U.S. 37, 91 S.CT. 746.27 L.Ed.2d 669 (1971).
The plaintiff moved this court for an ex parte temporary restraining order which was denied without hearing because the defendants were entitled to notice and an opportunity to be heard. The matter then came before this court for a rule to show cause on the injunctive relief sought. That prompted a motion to dismiss to be filed by the defendants. A summary of the defendants' contentions was that the court lacked subject matter jurisdiction to hear the plaintiff's application for injunctive, relief because: (1) the plaintiff has failed to exhaust his administrative remedies before the State Dental Commission which is hearing the disciplinary action against him which he now seeks to enjoin; (2) plaintiff was required to first use the administrative proceeding, which by possibly giving him the relief he seeks would permit the jurisprudential rule to be honored which avoids constitutional determination about disputes which can be decided on another basis; (3) once the commission acts, if dissatisfied with the agency's decision, plaintiff's remedy is to seek judicial review by taking an administrative appeal from the agency's final determination pursuant to § 4-183 (b); (4) General Statutes § 4-183 provides for stay of the agency's action pending appeal which would protect the plaintiff's licensure and other rights adequately; (5) exhaustion of remedies would not be a futile act because such CT Page 11416 legal futility permitting bypass of administrative remedies exists only when such administrative remedy could not result in a favorable decision and would therefore invariably involve subsequent decision and would therefore invariably involve subsequent judicial proceedings; (6) First Amendment claims of violation of the plaintiff's rights to speak and advocate freely do not excuse the required exhaustion of administrative remedies; (7) plaintiff's allegations of bias against members is not sufficient to constitute "disqualifying" basis; and (8) the plaintiff's First Amendment claims have not ripened sufficiently for judicial review because the defendant Dental Commission has made no orders against the plaintiff.
The plaintiff indicated his willingness to proceed first through a hearing and decision before the State Dental Commission provided the panel reconstitutes itself so that it is not comprised of American Dental Association members. The defendants refuse to do this.
The Court denied this earlier motion to dismiss because it believed the plaintiff was entitled to present what evidence he had as to the futility exception to the normal requirement of exhaustion of administrative remedies warranting a judicial bypass of the administrative hearing before the State Dental Commission. While such a proceeding should not be encouraged or entertained with respect to every disciplinary proceeding where professional licensure is at stake, courts should not shut their ears to all entreaties of litigants, where the allegations of the complaint and offers of proof warrant a hearing. Otherwise the futility exception would be nothing more than a floating gossamer with a webbing so slight and insubstantial that it could serve no useful purpose.
Although the plaintiff once alleged that because certain commission members were members of the American Dental Association, they had a pecuniary or proprietary interest in the outcome of the proceedings because of ADA participation in certain patents or royalties from the mercury amalgam formulation, there was no evidence of this presented and the court finds for the defendants on this issue.
To the extent that the plaintiff offered a related theory as to pecuniary interest of commission members in discouraging views opposed to use of these amalgams lest their own practices be affected negatively or they be subjected to malpractice suits, the court does not find that proved either. CT Page 11417
Two of the three members designated to hear the disciplinary charges against Dr. Breiner are members of the Connecticut Dental Association and the American Dental Association. That fact has led to futility claims, both because of the policies of the American Dental Association and because of the policy which the Connecticut State Health Department was responsible for having the Dental Commission adopt which coincided with national ADA policy on that same subject prior to initiating disciplinary proceedings against the plaintiff.
The most difficult issue with which this court contends is the evidence ably brought out by the plaintiff's counsel about the involvement of State Health Department official Stanley Peck in placing an agenda item on a Connecticut State Dental Commission business schedule for a regularly scheduled meeting of the commission. That item XII placed on the June 20, 1994 agenda, was entitled "Replacement of Amalgams — Dr. Unger."
The minutes of the meeting indicate that the following action was taken:
 Replacement of Amalgams — The Commission accepts the American Dental Association's position on the replacement of amalgams, which is that it serves no medical purpose.
At the time this was done Peck knew that other dentists had complained against Dr. Breiner.
Although no formal vote was taken on this item at the June 20th meeting, it was evidently adopted by consensus. The minutes reflect its adoption without notice or hearing to anyone other than the limited personnel who received the meeting agenda. The minutes of the September 12, 1994 meeting indicate that the minutes of the June 20, 1994 meeting were accepted.
There is no evidence that either Dr. David W. Perkins or Dr. William M. Bridgeford, who will be sitting on the hearing panel, inspired the placement of this on the agenda or knew at the time it was so placed, as did Mr. Peck, that complaints had been made by other dentists about Dr. Breiner. Nor is there evidence that they knew there were complaints about any dentist involving mercury amalgam use. It is clear to the court that very little attention or debate was given to this policy statement by any CT Page 11418 Dental Commission member. Ultimately, after Mr. Peck succeeded, the State of Connecticut Department of Public Health Bureau of Regulatory Services proffered a "Statement of Charges" dated January 17, 1997. One of these treatments is alleged to have occurred twelve years before the Statement of Charges was lodged and before the State Dental Commission took a position on removal of mercury amalgams. The three charges against Breiner alleged that the plaintiff, Breiner, respectively removed fillings from teeth, advocated removal of teeth or extracted teeth to relieve the symptoms of Lou Gehrig's disease, anemia or Hodgkin's disease.
The State Health Department has the right to ensure that practitioners it licenses meet minimum standards of care and do no harm to patients. There must be some review of standards so that they do not remain immutable in the face of scientific and medical advances.
While both Dr. Perkins or Dr. Bridgeford were Connecticut, Dental Association or American Dental Association members, the plaintiff has not sustained his burden to prove that an appearance before them would be futile. In order to prove bias as a ground of disqualification, the plaintiff must show more than an adjudicator's announced previous position about law or policy. He must show that the adjudicator has prejudged adjudicative facts that are in dispute.
Dr. Perry Opin, an activist member of the Connecticut State Dental Society, also complained against the plaintiff, Dr. Breiner. However, both Dr. Perkins and Dr. Bridgeford have no recollection of receiving a copy of Dr. Perry Opin's complaint letter before the Dental Commission took its position on removal of mercury amalgam dental fillings. If received, copies of communications from Dr. Opin should be memorable, since his letterhead incorporates a stylized version of an antique automobile.
Dr. Perkins, a hearing panel member, did not know that Dr. Perry Opin's letter had prompted the agenda item. At the injunction hearing, Dr. Perkins expressed the opinion that the A.D.A. probably had the best information on the mercury amalgam issue. He also said that A.D.A. guidelines are something that he felt dentists have to be bound by. To Dr. Perkins knowledge, the State Dental Commission had never adopted any other American Dental Association position as a State Dental Commission CT Page 11419 position. Dr. Perkins indicated at the injunction hearing that when he was asked to recuse himself earlier he did not stop to consider his involvement in the adoption of the amalgam removal policy. Dr. Bridgeford, a member of the Breiner hearing panel, was present at the June 20, 1994 meeting at which the Dental Commission policy on mercury amalgams was adopted. He recalled a round table discussion at it among the dentist members of the State Dental Commission in which the lay members did not participate. It lasted between three to five minutes. He now says it was not the State Dental Commission's intent to set up a rule or regulation and it was not a criteria. Instead he saw it as a "circumstance that, if this would occur, you would have to look at what came before you and this would be one of the ways to evaluate as criteria whether or not this was appropriate or inappropriate, depending on the circumstances that the occasion was surrounded with." He did not recall any discussion by the Dental Commission members of the phrase "serves no medical purpose" at the meeting at which the A.D.A. position was adopted. He indicated by adoption of the "American Dental Association's position" that the Commission was "open to reviewing this as part of any other ethical code in the conduct of dentistry as we needed to do on a case specific basis." He indicated his awareness of the opposing schools of thought about the use mercury amalgams. He was aware of his vote to adopt the A.D.A. position when he refused to recuse himself.
He saw adoption of the A.D.A. position by the State Commission as a way to reassure members of the public whose mouths held these mercury alloys.
Commissioners are not required to come to their duties in a mental vacuum. Where professional conduct of members of a learned profession is to be regulated, it is not surprising that those members of regulatory bodies who also practice in the same learned profession may have some ideas of what generally constitutes acceptable practice formed prior to hearing the issues in a specific case. From the evidence presented before it, this court cannot say that the hearing would be a sham or futile. The plaintiff remains licensed while the hearing proceeds and has a right to judicial review of any unfavorable decision and, under § 4-183 of the statutes, to petition for a stay of any order suspending or revoking his right to practice.
There has been no showing here that any commissioner has already determined to impose discipline even before hearing CT Page 11420 evidence in this case or has already decided that Dr. Breiner performed unnecessary or harmful procedures or himself advised them.
Substantial issues have been raised about the method and manner of adoption of the Dental Commission's positions on mercury amalgam, and the plaintiff should be accorded the right before the administrative tribunal to make a full, fair and complete record of all of them and to urge the nullity of that adoption because of failure to comply with statutory procedures and accepted due process standards.
The constitutional claims the plaintiff makes are not ripe for judicial decision. Some or all of them may be mooted by the Dental Commission's decision, if favorable to the plaintiff.
Upon all of the evidence, the court finds the plaintiff has an adequate administrative remedy.
In McKart v. United States, 359 U.S. 185, 194-195;23 L.Ed.2d 194-195 (1969), the U.S. Supreme Court observed that:
 Judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise . . . [N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. . .
For all these reasons injunctive relief is denied, and the case is dismissed.
FLYNN, J.