[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is defendant's (Comcast) motion for summary judgment with respect to counts one, two and three of the plaintiff's amended complaint.
Said motion for summary judgment should be granted with respect to counts one and two and denied with respect to count three.
The plaintiff, Renae Kennedy, was an employee of the defendant, Comcast Cablevision of New Haven (Comcast), from 1987 to 1996, working as a customer service representative for the majority of her employment. The plaintiff's responsibilities included speaking to customers by phone or in person about Comcast services. The defendant periodically recorded telephone conversations between employees and customers. The plaintiff was aware of the defendant's phone monitoring procedures and had signed a waiver consenting to such at the beginning of her employment.
During 1996, the defendant promoted Sprint long distance service along with its own cable services. A Comcast customer could place an order for Sprint services at the same time as ordering Comcast services. To encourage the promotion of Sprint, customer service CT Page 4970 representatives were rewarded with incentive pay or gifts, based upon their sales of Sprint services.
On November 4, 1996, the plaintiff's supervisor called the plaintiff into her office and informed her that two work orders indicating that two customers had requested Sprint service did not correspond with the telephone conversations in which the customers had not requested the service. Kennedy was informed that she would be terminated on November 6, 1996. The plaintiff denied the allegations, lost her breath and fell to the floor. The plaintiff does not claim that she was physically injured from this fall.
On November 6, 1996, the plaintiff attended a meeting in the general manager's office. Also present were the plaintiff's supervisor, the general manager, two persons from Human Resources and a union steward. The plaintiff was given a memorandum indicating that she was terminated based on the defendant's conclusion that she had activated the Sprint service for two customers without their authorization. The plaintiff refused to sign an acknowledgment of the memorandum and left the premises. The plaintiff alleges that as a result of her termination she suffered severe emotional distress.
The plaintiff denies the defendant's allegations of wrongdoing and claims that the defendant actually terminated her because she was three months pregnant. The plaintiff filed an amended complaint on February 26, 1999 in four counts, directing the first three counts against the defendant.[1] The first count alleges a claim for wrongful discharge in violation of General Statutes § 46a-60[2], prohibiting discriminatory employment practices. The second count alleges a violation of General Statutes § 52-570d, prohibiting illegal recording of private telephonic communications. The third count alleges a claim for intentional infliction of emotional distress. The defendant filed a motion for summary judgment with respect to counts one, two and three on October 22, 1999. The plaintiff filed a motion in opposition on December 28, 1999. Both parties were heard in oral argument on January 18, 2000.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must CT Page 4971 substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Maffucci v. Royal Park Ltd. Partnership,243 Conn. 552, 554. "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence."United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 378;Craftsman, Inc. v. Young, 18 Conn. App. 463, 465; cert. denied,212 Conn. 806. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." United Oil Co. v. Urban Redevelopment Commission, supra,158 Conn. 379; Craftsman, Inc. v. Young, supra. 18 Conn. App. 465.
In her first count, the plaintiff alleges that the defendant's discharge of the plaintiff "was pretextual in nature and in direct violation of General Statutes § 46a-60 (a)(7) as plaintiff was terminated because of her pregnancy." The defendant claims that the plaintiff failed to exhaust her administrative remedies because "[p]ursuant to [General Statutes] §§ 46a-100 and 46a-101, [the plaintiff] was required to obtain a release of jurisdiction from the [Commission on Human Rights and Opportunities (CHRO)] before bringing this civil action for discrimination."[3] The plaintiff further claims that the specific relief sought by the plaintiff, including compensatory damages for emotional distress, punitive damages and attorney's fees, is beyond the power of the CHRO, and thus the CHRO remedy is inadequate.
The Connecticut Supreme Court has "frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specific remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." Johnson v. Dept. of Public Health,48 Conn. App. 102, 120. "`When the legislature enacts a comprehensive remedial scheme such as [the Human Rights Statute] with procedural safeguards by which claims are to be determined by an administrative agency before judicial review is made available, it has laid that down as the public policy most likely to produce results. To effectuate this public policy, the legislative intent is that the trial court should not, generally speaking, act or be called upon to act, until there has been compliance with the statutory scheme.'"Lucarelli v. Stop Shop Companies, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 405521 (March 10, 1999, Levin, J.), quoting Johnson v. Dept. of Public Health, supra,48 Conn. App. 120. CT Page 4972
"[As] our Supreme Court [has] said: `The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency s findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.'" (Citations omitted.) Johnson v. Dept. of Public Health, supra,48 Conn. App. 111, quoting Pet v. Dept. of Public Health Services,207 Conn. 346, 351. "Furthermore, [t]he plaintiff's preference for a particular remedy does not determine the adequacy of an administrative remedy. . . ." Johnson v. Dept. of Public Health,
supra, 48 Conn. App. 119. "[A]lthough it is true that the CHRO, which may order reinstatement with or without back pay, may not make an award of damages for emotional distress or attorney's fees the CHRO may grant a plaintiff a release to bring a civil action in superior court where other relief is available." Lucarelli v. Stop ShopCompanies, Inc., supra, Superior Court, Docket No. 405521.
A split of authority exists within the Superior Court as to whether a cause of action seeking compensatory and punitive damages and attorney's fees constitutes an exception to the exhaustion doctrine because it seeks relief that the CHRO does not have authority to award. Under the first count, the plaintiff alleges a violation of General Statutes § 46a-60 (4)(7) "because her employment was terminated because of her pregnancy." The plaintiff has never filed a claim with the CHRO and likewise has never obtained a waiver. "Where a plaintiff appears to be deliberately by-passing CHRO by asserting claims for relief that CHRO may not grant . . . the exhaustion doctrine should apply. If the plaintiff has at least made a good faith effort to allow CHRO to try to resolve his or her complaint, and, after that agency's decision, the plaintiff still seeks remedies that CHRO is unable to provide, he or she should not be compelled to continue to pursue a futile administrative course but should be allowed to turn to the courts. This approach is faithful to the basic principles of the exhaustion doctrine and prevents would-be plaintiffs from simply engaging in an end run around the agency by reciting a demand for remedies that he or she knows the agency is unable to provide." Dinegar v. University of New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 378256 (October 16, 1997, Silbert, J.). Defendant's motion for summary judgment with respect to count one of the plaintiff's complaint should be granted for failure to exhaust administrative remedies.
Count two alleges that the defendant wrongfully recorded the CT Page 4973 plaintiff's telephone conversations in violation of General Statutes § 52-570d[4]. The plaintiff admits to signing a written waiver permitting the defendant to record telephone conversations with its customers, and, therefore, the statute does not apply to the present case. Because there is no material fact at issue with respect to this count, defendant's motion for summary judgment should be granted as to the second count.
In count three of her amended complaint, the plaintiff alleges that "the defendant . . . intended to inflict emotional distress upon the plaintiff or knew or should have known that emotional distress was a likely result of its/their collective conduct." In its opposition memorandum, the defendant claims that "the plaintiff's own description of the manner in which she was terminated by [the defendant] does not constitute the egregious conduct which must be present in order to establish a claim for intentional infliction of emotional distress. . . . [and] plaintiff provides no evidence of severe emotional distress."
To state a claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. NewHaven, 220 Conn. 225, 266. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Bell v. Board of Education, 55 Conn. App. 400, 410.
Defendant's motion for summary judgment on count three should be denied because reasonable minds could differ on whether the defendant's actions rise to the level of "extreme and outrageous" conduct.
Accordingly, said motion for summary judgment is granted as to the first and second counts and it is denied as to the third count.
FRACASSE, JUDGE.